[Civ. No. 4353. Second Appellate District, Division One.—April 23, 1924.]

LAKE VIEW No. 2 OIL COMPANY (a Corporation), Appellant, v. FLOYD G. WHITE et al., Respondents.

[1] CORPORATIONS—SECRET PROFITS—EVIDENCE—FINDINGS.—In this action by a corporation to recover certain shares of stock in another corporation, together with the dividends paid thereon, which stock it was alleged was acquired by one of the defendants, while he was acting as the secretary and a director of plaintiff, by reason of the connivance and assistance of his codefendants,

1. Liability of directors to corporation or stockholder for secret profits, note, Ann. Cas. 1917A, 238. See, also, 6 Cal. Jur. 1085.

who were the president and secretary, respectively, and also directors of plaintiff at the time the stock was acquired, secretly and under such circumstances that the stock, and the profits therefrom, lawfully and equitably belong to plaintiff, the evidence was sufficient to sustain the findings in favor of the defendants.

[2] Id.—Erroneous Rulings on Evidence—Appeal.—On appeal from the judgment in favor of the defendants in such action, the appellate court will not critically examine the merits of claimed erroneous rulings on matters of evidence, where it is not at all probable that the matters which were the subjects of these rulings had any controlling influence upon the trial court's decision wherein it determined that the defendant who had acquired the stock in question did not acquire said stock in the name of a certain third person or in any manner, except that nearly a year after the stock was acquired by said third person it was purchased by said defendant for a substantial consideration, or upon the further decision wherein the trial court determined that the defendants did not fraudulently conspire together for the purpose of obtaining said stock for said defendant.

(1) 14a C. J., p. 239, sec. 2062.    (2) 4 C. J., p. 651, sec. 2541.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. R. Young and C. E. Spencer for Appellant.

Seward A. Simons for Respondents.

CONREY, P. J.—The defendant Floyd G. White, at a time when he was the secretary and a director of the plaintiff corporation, acquired ten thousand shares of stock in the Interstate Oil Company, a corporation, and thereafter, as owner of said shares of stock, received dividends from said Interstate Oil Company. The plaintiff, claiming to be the real owner of said shares of stock, brought this action to recover the same, together with the amount of said dividends. Plaintiff alleged that said defendant acquired said property through and by reason of the connivance and assistance of defendants C. H. White and D. W. Wicker-

2.  See 2 Cal. Jur. 1020, 1022; 2 R. C. L. 247.

sham, who were, respectively, president and treasurer, and were directors of plaintiff, at the time when defendant Floyd G. White acquired said shares of stock, and during the time when the transactions occurred which led to his acquisition of said shares of stock; defendant Floyd G. White being during all of that time secretary and a director of plaintiff. Plaintiff alleged that said property and profits were acquired by defendant Floyd G. White secretly, and that he and his codefendants, pursuant to agreement between themselves, concealed from plaintiff certain facts relating to the transactions in question, and thereby made it possible for defendant Floyd G. White to obtain for himself the said property and profits which lawfully and equitably belonged to the plaintiff.

Answering the complaint, the defendants denied substantially all of those allegations from which it could be inferred or from which the conclusion could be derived, that the defendants agreed or conspired together to defraud the plaintiff, or that the defendant Floyd G. White by and with the assistance of his codefendants or either of them, or at all, abused his position as secretary, or as director of the plaintiff, or that he thereby secretly or at all acquired any property or profits which lawfully or equitably belonged to the plaintiff. Upon the issues of fact so presented, the case was tried. The findings of fact upon these issues were in favor of the defendants. Accordingly, judgment was entered that the plaintiff take nothing by this action. From that judgment the plaintiff appeals.

The case for the plaintiff, with respect to the principles of law upon which it relies, rests upon certain well-known doctrines which are amply supported by authority, and which in substance are to the effect that the directors and other officers of a corporation are trustees and fiduciaries of the stockholders, and are held to the highest degree of good faith in their dealings, and must serve only the interests of their beneficiaries; that they are not permitted to make profits for themselves out of the trust estate; that they will not be allowed through use of knowledge gained in their official capacity to make secret profit for themselves out of the funds or other assets of the corporation; that these obligations must be observed in the highest good faith, and that when they have been disregarded by the officer,

he cannot make the excuse that he was free from any intent to injure the corporation. Since these principles are well established and are not disputed by respondents, we accept them for the purposes of this case without discussion, and without quotations from any of the numerous decisions in which they have been discussed. The decision of this appeal depends upon the disposition to be made of appellant's contention that certain of the findings are not supported by the evidence.

In August, 1912, Pentland Union Oil Company was the owner of a lease of eighty acres, comprising the west half of the northwest quarter of a section of land in Kern County. This lease was what is commonly known as an oil lease, under which the lessee was obligated to drill wells on said land for the production of oil, and was entitled to the oil so produced, subject to certain conditions, including payment of rent in the form of royalties to the owner. At the same time, the said Pentland Company owned the equipment of a well, known as Well No. 1, on the south half of said property. In the record of this case, the south half of the property is designated as the south forty, and the north half as the north forty. On the thirtieth day of August, 1912, the Pentland Company entered into a contract with the Lake View No. 2 Oil Company, under which the lease, as to the south forty, was transferred to the plaintiff. The wells on the south forty were given odd numbers and those on the north forty were given even numbers, and are so designated in the record. The terms of the lease were such that the lessee, the Pentland Company, had obligated itself, its successors and assigns, to complete at least one well on the north forty within one year from September 11, 1911, and continuously to drill in such manner as to complete one well in every year subsequent to said date until eight wells had been completed on the north forty. The lessee likewise agreed to complete at least one well on the south forty within one year from June 11, 1912, and continuously to work in drilling new wells at the rate of at least one well in every year thereafter until eight wells had been completed on the south forty.

The contract of August 30, 1912, contained terms obligating Lake View No. 2 Oil Company to take charge of the

drilling of well No. 1 on the south forty and well No. 2 on the north forty, and to make payments and accountings from time to time as set forth in the contract. It appears from the contract that the parties intended to obtain, if possible, from their lessor, the Sun Park Oil Company, a segregation of the land and lease so that thereafter the several rights of either party would not be jeopardized by a failure of the other party to comply with the terms of the lease as to its half of the land. But this contract further provided that "if the Sun Park Oil Company does not segregate said land and does not allow each party hereto to attorn to it directly and drill each quarter-section separately, then the parties hereto agree to at all times, fully comply with the terms of said lease, each to protect the other and in case either party, their successors or assigns fail to live up to the terms of said lease, then either party shall have the right to go on to the other party's property and comply with said lease and all the expenses incurred by it in complying with the lease for the benefit of the other party shall be billed to the other party" and be paid by it.

Said agreement was followed by a supplemental agreement of date September 14, 1912, between the same parties and a third party. But this supplemental agreement need not here be described. The changes made by it in the terms of the principal contract do not affect the questions which we shall have to discuss. It appears that the Sun Park Oil Company at all times refused to segregate the land or lease. Therefore both parties to the contract of August 30, 1912, continued to be mutually interested in preserving the integrity of the entire lease so far as necessary to prevent its forfeiture.

On the twentieth day of August, 1913, the Pentland Company entered into a contract with one H. C. Russell, whereby the Pentland Company agreed to assign to Russell all of its right in and to the north forty, and also to assign to Russell all of the Pentland Company's interest in said agreement of August 30, 1912, and in the supplemental agreement of September 14, 1912 (with exceptions not necessary for us here to consider). In consideration thereof Russell agreed to pay to the Pentland Company a

purchase price of seventy-five thousand dollars as follows: Eleven thousand dollars payable in monthly installments of one thousand dollars (together with interest on a part thereof), and the remaining sixty-four thousand dollars to be paid out of the proceeds derived from production of oil on said premises.

In November, 1913, the Interstate Oil Company, a corporation, was organized under the laws of California. On the 17th of that month Russell presented to this company an offer to sell and convey to it his said contract with the Pentland Company, in consideration of the issuance to him of ten thousand shares of the capital stock of said Interstate Oil Company, the repayment of all sums theretofore advanced by Russell on said contract and the performance of the contract by said company. This offer having been thereupon accepted, Russell executed to the Interstate Oil Company an assignment of said contract, and a certificate was issued to him for ten thousand shares of the capital stock of said company. Thereafter Russell transferred his said certificate of stock to defendant Floyd G. White. Upon surrender of that certificate a new certificate for the same shares was issued to White, who ever since has been the record owner thereof, as shown on the books of the company. As found by the court, the Interstate Oil Company has paid Floyd G. White twenty-two thousand dollars of dividends on said shares of stock.

In stating its cause of action, appellant alleged facts which in substance amount to the charge that Russell was an irresponsible person who took the contract of August 20, 1913, as a dummy for Floyd G. White; that Russell was unable to pay and did not pay anything for the contract; that the funds of appellant were used by the defendants to pay said monthly installments named in the Russell contract to the extent of eight thousand dollars thereof; that other funds of appellant were used to pay expenditures made in the drilling of another well on the north forty in connection with and in performance of obligations assumed by Russell under the terms of his contract, in the development of wells on the north forty; that the defendants caused Russell to offer to assign to appellant his said contract without compensation to Russell therefor, but that the defendants concealed from appellant that its funds were

being used to meet the payments required by the Russell contract, and in other ways misrepresented the facts concerning said Russell transaction, with the intention that appellant would thereby be influenced to refuse to accept said contract; that in fact appellant by reason of said concealments and misrepresentations, and not knowing that appellant was in fact making said payments and was in fact the owner of said contract, refused to accept from said Russell an assignment of said contract; that prior to said offer made by Russell to assign his contract to appellant, the defendants agreed among themselves to endeavor to dissuade and prevent appellant from accepting or performing said contract and likewise agreed among themselves to organize a new corporation and to cause said contract to be transferred to it in consideration of stock to be issued in the name of Russell, but in truth and in fact for said Floyd G. White, and to use the funds of the plaintiff in promoting said corporation to be organized and to enable it to carry out said contract; that the Interstate Oil Company was organized in pursuance of said plan or scheme and agreement, and Russell assigned his said contract to the Interstate Oil Company, which, in consideration thereof, issued to Russell ten thousand shares of its stock; that Russell had paid nothing for or on account of said contract; that Russell thereafter, at the instance and request of Floyd G. White, indorsed said certificate to said White; that said White did not nor did anyone for him ever pay any consideration to Russell for said stock; and that the facts that Russell did not own any stock or claim any interest therein, and that said stock was in reality being issued to and obtained by Floyd G. White, were concealed from the plaintiff and remained unknown to the plaintiff until on or about June 17, 1919.

It is admitted, or is established so that there is no contrary contention, that when the Russell contract was negotiated both Floyd G. White and Russell intended and expected that the contract would be assigned to the plaintiff if the plaintiff would accept it, and that Russell would make such assignment without demanding any compensation therefor; that Russell was unable to pay and did not pay anything for the contract or in performance of its obligations; that in consideration of Russell's assignment of

the contract to the Interstate Oil Company a certificate for ten thousand shares of stock of that company was, on or about the twentieth day of November, 1913, issued to Russell, who thereafter assigned the same to Floyd G. White.

But the court also found and determined in its decision of this case that it is not true that Floyd G. White acquired said Russell contract for or on behalf of the plaintiff. The court likewise found that said contract was never the property of the plaintiff; that the defendants did not at any time agree that they would endeavor to dissuade or prevent the plaintiff from accepting or performing said contract, and never agreed among themselves to cause said contract to be transferred to said new corporation in consideration of stock to be issued in the name of Russell, but in truth and fact for said Floyd G. White; and that it is not true that the defendants, or any of them, agreed to use the funds of the plaintiff in promoting said corporation to be organized to enable it to carry out said contract; that in fact the defendants did not, nor did any of them, use said funds for such purpose; that in the month of October, 1914, for a good and valuable and sufficient consideration, Russell sold said stock to defendant Floyd G. White, and indorsed and delivered the certificate thereof to him, and thereupon the said Floyd G. White "became the owner of said stock by these means." The court further found that the payments made out of the funds of appellant, as aforesaid, were not made secretly; that, on the contrary, said payments were paid into the bank (where the contract was held in escrow) with the knowledge of the plaintiff, and were made in the usual course of the plaintiff's business for its own protection and entered on the books in the regular course of business, and an account thereof was made and kept in the usual way; that said payments continued to be made by the plaintiff until the close of said escrow, pursuant to an arrangement with the Interstate Oil Company, under a running account covering the said payments required to be made by said contract, and any disbursements in the drilling of any wells located upon the said north forty acres covered by said contract; that from time to time the said Interstate Oil Company paid to the plaintiff all advances made by the plaintiff, pursuant to their mutual arrangement. The findings contain a statement

showing the state of accounts between said companies for the full fiscal year following the twentieth day of September, 1913, and show that within that period of time all payments and advances made on account of said Russell contract had been repaid to the plaintiff by the Interstate Oil Company; that in the month of March, 1915, the facts as to the acquisition of the south forty acres by the plaintiff and the north forty acres by the Interstate Oil Company were fully laid before all the stockholders of the plaintiff and the plaintiff itself, and that the rights acquired by the Interstate Oil Company in said north forty acres have at all times been acquiesced in by the plaintiff.

Appellant contends that the evidence is insufficient, and in particular is insufficient to sustain the findings referred to in the last preceding paragraph hereof.

Floyd G. White testified directly that he purchased the shares of stock from Russell in October, 1914, in consideration of money paid by him to Russell at that time, together with the cancellation of notes which Russell had given him for moneys previously loaned. Appellant insists that for various reasons discussed in the brief this testimony is inherently improbable. This argument, no doubt, was made to the superior court, upon which devolved the duty to weigh the evidence. Since it is in no way impossible that this testimony was true, and since that court found that it was true, we in this court are bound by that decision upon that question of fact.

The fact being thus established that in the transaction between Russell and the Interstate Oil Company the defendant Floyd G. White did not acquire or attempt to acquire said shares of stock for himself in the name of Russell, or at all, it then readily follows that the evidence is sufficient to prove that the defendants did not conspire together to dissuade or prevent the plaintiff from accepting or performing the Russell contract, or to cause it to be transferred to the new corporation, and thereby enable White to acquire said shares of stock in that corporation, as alleged in the complaint. It is not claimed that defendants C. H. White and D. W. Wickersham ever made any profit out of the Russell contract, or shared in any way in the illegal profit alleged to have been made by Floyd G. White. These conclusions having relieved C. H.

White and D. W. Wickersham from any complicity in the alleged fraud upon the plaintiff, it follows that their knowledge of the terms of the Russell contract at the time when the same was made gave the same notice and information to the plaintiff corporation that would be given by the knowledge of any other directors of the corporation. The minutes of the corporation, of the meeting of the board of directors, at the time when Russell offered to transfer his contract to the plaintiff, show that at that time (August 22, 1913), after receiving Russell's offer in writing, the board of directors instructed the secretary to send to the stockholders a circular letter calling for their opinion as to whether or not they would favor the purchase of the contract. We have examined those minutes and the circular letter itself, together with the testimony of the witnesses concerning what occurred there, and the further testimony concerning the visit which defendant Floyd G. White made to sundry stockholders in Michigan and in Wisconsin. In these transactions Floyd G. White contends that he was endeavoring to persuade the corporation to accept Russell's offer, whereas the plaintiff contends that, while pretending to favor such acceptance, he was subtly instilling into the minds of the stockholders doubts and opposition, which led them to advise the rejection of Russell's offer. Here, again, we are confronted by the fact that there is evidence tending to sustain the court's finding in favor of the defendants upon these issues of fact, and that, therefore, we are bound by the determination of those facts as found in the decision of the trial court. It is contended that the evidence shows without conflict that Floyd G. White did not tell the disinterested members of the board (meaning thereby the directors other than the defendants herein) that Russell had not paid out anything to procure the contract, nor that Floyd G. White, secretary of appellant, with its attorney, had carried on all of the negotiations, nor that Russell was a mere nominal holder of the contract for the purpose of transfer to the plaintiff, nor that the eleven thousand dollar payment could be made in installments. The circular letter which was sent to the stockholders, and the testimony relating to this phase of the case, is not sufficient to compel the conclusion that any conscious or intentional misrepresentation was made, either by misstate-

ment of fact or by withholding from the directors or stock-holders knowledge which should have been received by them. The circular letter itself referred to various facts which might well have been received by the stockholders as argument favorable to the acquisition of the Russell contract. Upon the other hand, it stated that the proposition "calls for an expenditure of seventy-five thousand dollars—eleven thousand dollars cash, and the balance of sixty-four thousand dollars to be paid out of production of wells," etc., and indicated the probability that the acceptance of the contract would make it necessary for the stockholders to respond to two assessments—one for three cents per share, payable immediately, and one for two cents per share in four or five months. But it was pointed out that in case of favorable production of oil the second assessment might not be necessary. As a whole, read from end to end, together with the conditions then existing as shown by the evidence, it does not appear that this letter was an unfair or misleading document. [1] Without further extending our statement of the testimony—which testimony is very voluminous—it must suffice to say that we think the evidence is sufficient to sustain the findings.

[2] It is contended that certain rulings of the court on matters of evidence were erroneous and prejudicial to appellant. The first group of exceptions relates to evidence admitted in relation to the financial condition of appellant in August, 1913, as well as at some later dates. Exception No. 8 relates to the admission of some evidence in connection with the circumstances which led to the contract of August 30, 1912. Exception No. 10 refers to a ruling which limited appellant's examination of the witness Wickersham concerning a report made by him as treasurer to the stockholders of appellant in March, 1919. Exception No. 11 refers to testimony of Wickersham, stating the amount in which he was a guarantor on notes and accounts of appellant in 1913. Exception No. 14 refers to a ruling admitting in evidence Defendant's Exhibit "D," which consists of certain figures and data taken from the books of appellant. Exceptions numbered 15, 16 and 17 refer to certain testimony of the witness Blight, who was a public accountant and bookkeeper, who kept the books of appellant.

In view of the conclusions at which we have arrived, and which we have stated, concerning the main issues of the case, we are of the opinion that it is not necessary to critically examine the merits of these rulings. It is not at all probable that the matters which were the subjects of these rulings had any controlling influence upon the court's decision wherein it determined that Floyd G. White did not acquire the said ten thousand shares of stock, in the name of Russell or in any manner, except that nearly a year later he purchased the same from Russell for a substantial consideration; or upon the further decision wherein the court determined that the defendants did not fraudulently conspire together for the purpose of obtaining said stock for the defendant Floyd G. White.

The general argument made by counsel with relation to the testimony to which the exceptions relate, is that the court was erroneously receiving evidence tending to show that appellant could not finance the Russell contract—although it had in fact financed it to some extent—and that the admission of this evidence must have had an effect upon the court by causing it to conclude that the plaintiff sustained no loss through the transfer of the Russell contract to the Interstate Oil Company. We think that this evidence had an appropriate bearing upon the question concerning the reasonable fairness of the representations made to the stockholders. It might well be that although appellant paid out some money on the Russell contract and for the commencement of another well on the north forty before that contract and the work had been taken over by the Interstate Oil Company, that nevertheless this was a strain upon the resources and credit of appellant, which it was necessary to relieve at an early date. This was accomplished through the intervention of the Interstate Oil Company through its purchase of the Russell contract and under the arrangement made between that company and appellant. This is shown by the statement set out at page 438 of the transcript. It there appears that beginning in January, 1914, and during the months thereafter, appellant received from the Interstate Oil Company large sums of money, so that by August of that year the balance of the account ran against appellant. The highest balance of credit in favor of appellant at any time was $4,358.59 at

the end of December, 1913. By March, it had been reduced to less than one thousand dollars, and thereafter never was as much as three thousand dollars. It is unreasonable to contend that appellant was unaware of these facts and was not chargeable with notice of the circumstances connected therewith.

The judgment is affirmed.

Houser, J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 19, 1924.

Myers, C. J., and Shenk, J., dissented from the order denying a hearing in the supreme court.